**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **INDIVIDUAL NETWORK, LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Civil No. 2:07-CV-158** |
| **v.** | § | **PATENT CASE** |
| | § | |
| **APPLE, INC.,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION**

This Memorandum Opinion construes the disputed terms in U.S. Patent Nos. 7,117,516

("the '516 Patent") and 5,724,567 ("the '567 Patent").

**BACKGROUND**

The patents-in-suit generally relate to computer methods and systems that provide

information to a user based on the user's personal preferences.

The '516 Patent describes a method and system for providing a customized media list

and customized media to a user over a network. Personalized data of the user is provided to a

computer system, which generates the customized media list for the user based on the user's

personal data. The customized media list contains customized media in the form of customized

content and customized advertising. The customized media list and the customized media are

provided to the user through the computer system.

The '567 Patent relates to a system for providing a user with ranked information based on

that user's personal profile. An information access system stores items of information in an

1

unstructured global database. Client computers connected to a network access a server to obtain a personalized list of recommendations for the user that is generated based upon profile information provided by the user. The system delivers to the user a list of information relevant to that user's personal profile. The user can express his likes or dislikes relating to any item of information, and the user profile is updated according to the interests of the user.

Individual Network, LLC ("Individual Network") contends that Apple, Inc. ("Apple") infringes the '516 patent. Apple contends that Individual Network infringes the '567 patent.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the

claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d

1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

The patents in suit also contain means-plus-function limitations that require construction. Where a claim limitation is expressed in "means plus function" language and does not recite definite structure in support of its function, the limitation is subject to 35 U.S.C. § 112, ¶ 6. *Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). In relevant part, 35 U.S.C. § 112, ¶ 6 mandates that "such a claim limitation 'be construed to cover the corresponding structure . . . described in the specification and equivalents thereof.'" *Id*. (citing 35 U.S.C. § 112, ¶ 6). Accordingly, when faced with means-plus-function limitations, courts "must turn to the written description of the patent to find the structure that corresponds to the means recited in the [limitations]." *Id*.

Construing a means-plus-function limitation involves multiple inquiries. "The first step in construing [a means-plus-function] limitation is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). Once a court has determined the limitation's function, "the next step is to determine the corresponding structure disclosed in the specification and equivalents thereof." *Id*. A "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id*. Moreover, the focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function." *Id*.

## CLAIM CONSTRUCTION

### U.S. PATENT NO. 7,117,516

**Computer System**

Claims 1, 13-16, and 18-19 of the '516 Patent contain the term "computer system." Individual Networks contends the term means "one or more general purpose computing devices performing server and/or client functions, including a storage medium." Apple contends "computer system" means "a computer in which the client is collocated with the server." The parties disagree whether "computer system" requires the client to be located at the server.

The claims define the relationship between the computer system and the user. The claims set forth that customized media and a customized media list are stored at a computer system. The claims also set forth that the customized media list is "not stored at the user" and that the customized media is not stored "local to the user." '516 Patent, col. 13:49-14:4, col. 14:56-15:5. This language clarifies that the "computer system" is not located at the user, but the

language does not limit the client to collocation with the server. Therefore, while the claims require that both the client and the server are located separate and apart from the user, the claims do not require that the client and server are collocated.

The specification of the '516 Patent discloses that "[t]he computer system 200 includes the client 235, server 225, and the server storage medium 205, or, in alternative embodiments, separate computer systems contained remotely at the client location and the server location." '516 Patent, col. 9:16-19. The specification further states that "[t]he general purpose computer, in one embodiment, acts as either the server 225 or client 235 of FIGS. 2-4, or both." '516 Patent, col. 11:23-29. In this manner, the specification provides written description support for a collocated client and server, but clearly explains that this structure is merely one embodiment of what may be covered by the claims. The embodiment provided in the specification is exemplary and does not limit the claims to a computer system wherein a client and a server are collocated. *See Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994). In fact, the word "collocated" cannot be found anywhere in the specification. The specification, therefore, does not provide any compelling evidence for restricting the "computer system" to an arrangement wherein the client is located at the server.

Apple improperly attempts to limit the claim based on the doctrine of prosecution disclaimer. However, ambiguous prosecution history cannot be used to trump the clear terms of the claims and specification. *Phillips*, 415 F.3d at 1317; *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)("[W]e have . . . consistently rejected prosecution statements too vague or ambiguous to qualify as a disavowal of claim scope . . . . Rather, we have required the alleged disavowing statements to be both so clear as to show reasonable clarity and

deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer.") (citations omitted).

Apple derives the term "collocated" from arguments made by the Applicant in the prosecution history of the '516 Patent. During prosecution, the Applicant and the Examiner argued at length regarding patentability of the claims over the Logan prior art reference (U.S. Patent No. 5,721,827), which disclosed a structure where the client was located at the user. In particular, Applicant argued as follows:

> In contrast, Applicant discloses an embodiment of a method and system for distributing personalized information <u>where the client functionality is collocated with the server functionality, both of which are accessed by a user through a network</u>.

'516 Patent file history, Third Supplemental Amendment, Nov. 20, 2004 at 11-12 (APP 0199-0200). Applicant set forth this argument as one embodiment covered by Applicant's claims that distinguished its claims from the Logan reference. Applicant did not, however, limit its claims to this singular embodiment. In other words, the fact that a client and server *may* be the same computer does not require such a result.

The manner in which Applicant limited its claims during prosecution is most clearly demonstrated by its final amendment to the claims during prosecution. In particular, Applicant added the following language to the claims in its final amendment to obtain allowance: "and wherein the customized media list is not stored at the user" and "without storing the customized media local to the user." '516 Patent file history, Response After Final With A Request for Continued Examination, Oct. 21, 2005 at 2 (APP 0261). This amendment covers the embodiment of a computer system wherein the client and server are collocated, but also covers and embodiment of a computer system wherein the client and server are located at separate and distinct network locations as long as neither the client nor the server resides at the user. In other

words, the Applicant did not include and the Examiner did not insist that the Applicant include the positive limitation "collocated" to distinguish the claims from Logan. Instead, the Applicant sought to distinguish Logan with negative limitations that require the computer system to store the customized media and the customized media list at a location other than at the user. It was this final amendment, not ambiguous arguments made earlier during prosecution, that caused the claims to finally be allowed over the Logan reference. The Applicant's arguments during prosecution do not amount to a clear and unmistakable disavowal of claim scope.

For these reasons, Apple's proposed construction overly limits the term "computer system." The Court adopts Individual Networks' proposed construction and construes the term "computer system" to mean "one or more general purpose computing devices performing server and/or client functions, including a storage medium."

**Stored/Storing**

Claims 1 and 13-16 of the '516 Patent contain the term "stored" or "storing." Individual Networks contends the term means "retained/retaining, other than temporarily for display purposes." Apple contends that the term means "retrievable from memory upon request." The parties' dispute, therefore, is whether the term should be construed broadly to include data that is merely being held and made available for access within the user's computer or whether the term should be construed more narrowly to exclude data that has merely been put into temporary internet cache memory at the user's computer to be used, for example, for display purposes. *See* Apple's Responsive Claim ‑Construction Brief at p. 14.

Claim 1 recites a method that includes steps of "storing" the customized media list and the customized media at the computer system. Claim 1 also requires that the customized media be delivered to the user "without storing the customized media local to the user." *See* col. 14:1-

4. Claim 13 recites a method that includes steps of "storing" the customized media list at the computer system, wherein the customized medial list is "not stored at the user. *See* col. 15:1-3. Method claim 14 is similar to claim 1 in that customized media delivered to a user is received without storing it local to the user. *See* col. 15:20-25. Claim 15 recites that personal profile information is not stored local to the user. *See* col. 15:31-33. Claim 16 recites that media preference information is not stored local to the user. *See* col. 15:51-52.

As discussed above, these negative limitations were added by amendment to the claims to gain allowance over the Logan reference.

Specifically, in characterizing the Logan reference, Applicant argued as follows:

In Logan et al., the *customized media (download compilation) is downloaded* into program data storage 107, i.e. <u>stored</u>, in the client/player 103 (see col. 6, line 56 through col. 7, line 3 in Logan et al.) then the user <u>accesses</u> *the downloaded customized media* at <u>the client computer 103</u>.

'516 Patent file history, Response After Final With a Request for Continued Examination, Oct. 21, 2005 at 12 (APP 0271) (italics added). Thus, Applicant defined "stored" in the context of Logan's downloading into program storage 107 in the client (user) computer 103.

Logan describes use of a data storage system that would exist in a conventional laptop or desktop computer and that includes both high speed RAM storage and a *persistent* mass storage device such as a magnetic disk memory. Audio, text and image data are stored locally in program storage device 107. The program content data may include compressed audio recordings and/or text files. *See* col. 3:1-18. To one skilled in the art, in conventional personal computer architecture, RAM storage provides the main memory accessed by the CPU during software program execution and stores the currently executing software program and immediately needed data, including image data that is to be sent to a display. The disk storage

provides archival data storage for software programs and data. Further, downloading is understood by one skilled in the art to refer to transferring a file to a user computer's archival data storage, which will later be transferred to RAM storage for execution. Logan indicates that downloading of the programming content for the user is made in segments stored in randomly addressable locations in the local mass storage unit. Thus, the downloading described in Logan, and what is referenced by Applicant in the prosecution history as "stored," is a data transfer that is placed into the persistent mass storage device of the data storage system and is other than a temporary storage of data for display purposes.

The arguments in the prosecution history regarding Logan's download into program storage indicates that the terms "stored and storing" are being used by Applicant in the context of the persistent mass storage device portion of the data storage system in Logan. Accordingly, the Court adopts Individual Networks' proposed construction that "stored/storing" means "retained/retaining, other than temporarily for display purposes."

**The Customized Media List Is Not Stored At The User;** and **Without Storing The Customized Media Local to The User**

For the reasons articulated in the construction of the terms "stored/storing," the Court interprets the term "the customized media list is not stored at the user" to mean "the customized media list is not retained, other than temporarily for display purposes, on the user's computer or other display device." Correspondingly, the Court interprets the term "without storing the customized media local to the user" to mean "the customized media is not retained, other than temporarily for display purposes on the user's computer or other display device."

**Storing Customized Media Corresponding To The Customized Media List;** and **Delivering Customized Media Corresponding To The Customized Media List**

Claims 1 and 14 contain the term "storing customized media corresponding to the customized media list." Claims 13, 15-16, and 18-19 contain the term "delivering customized media corresponding to the customized media list." Individual Networks contends that neither term requires construction. Apple argues that the customized media in both instances includes all of the media on the customized media list.

Thus, the parties' dispute is over the relative scope and import of the term "corresponding." In particular, the parties disagree whether the term "corresponding" requires the customized media to include all of the customized media represented on the customized media list or merely a subset of the customized media represented on the customized media list.

Storing Customized Media Corresponding To The Customized Media List

As described in the '516 patent, the server storage medium stores the entire content media and the entire advertising media warehoused in databases. '516 Patent, col. 4:23-26. The server also generates a customized media list using personalized data entered by the user. '516 Patent, col. 4:55-58. A customized media service module receives customized media that is based on the customized media list and sends the customized media to the media cache service module that contains a storage medium to hold the customized media. '516 Patent, col. 8:26-30. The specification, therefore, indicates that a "one-to-one" correspondence between the customized media and the customized media list, which would include all of the contents of the customized media list, is not necessary. The only requirement is that the customized media must be based on and include some of the contents of the customized media list.

The Court interprets the term "storing customized media corresponding to the customized media list" to mean "storing (as previously construed) one or more of the media represented on the customized media list."

Delivering Customized Media Corresponding To The Customized Media List

Apple seeks to require that there be automatic delivery of all of the customized media on the customized media list. A claim construction that excludes the preferred embodiment "is rarely, if ever, correct." *ScanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1285 (Fed. Cir. 2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)). Applying Apple's definition of automatically sending or delivering all the customized media to the user would necessarily entail storing portions of the customized media at the user or alternatively the unreasonable requirement not disclosed anywhere in the '516 Patent that the user views categorically all of the customized media instantaneously en masse. To the contrary, however, the claims of the '516 Patent clearly state that storing the customized media does not occur at the user or local to the user. '516 Patent, col. 13:49-14:4, col. 14:56-15:5. Further, the context of the claims and specification demonstrates that the user views the customized content and customized advertising in sequence and not instantaneously en masse. '516 Patent, col. 9:59-13:46. It would be illogical and impractical to deliver all the media to the user because that would exclude the preferred embodiment, which requires no storage of customized media local to the user. Ultimately, the absence of storing at the user negates the possibility that all of the customized media is automatically delivered to the user.

The Court interprets the term "delivering customized media corresponding to the customized media list" to mean "sending to the user one or more of the media represented on the customized media list."

**Means For Storing A User Profile For Each User Having Access To The Available Items Of Information**

Claims 1 and 15 contain the term "means for storing a user profile for each user having access to the available items of information." The parties agree that the term is a means-plus-function term governed by 35 U.S.C. § 112 ¶ 6. The parties also agree that the claimed function is "storing a user profile for each user having access to the available items of information." The parties, however, disagree regarding the structure corresponding to this function. Apple contends the corresponding structure is "user database 18." Individual Networks argues the corresponding structure is "a message server connected to a network, having a user database."

The specification of the '567 Patent describes a server containing both a message database and a user database. The specification's description that "[t]he user database 18 contains a profile for each of the system's users" demonstrates that each user profile is stored in the user database of the server. '567 Patent, col. 2:5-7. The message server and the network perform the functions of access and retrieval of information. '567 Patent, col. 4:2-44. The message server and the network do not actually perform the function of *storing* the user profile, as required by the function in the claims. Because the message server and the network do not actually perform the recited function, those elements are not corresponding structure and thus do not serve as claim limitations. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308-09 (Fed. Cir. 1998).

The Court determines that the structure corresponding to "means for storing a user profile for each user having access to the available items of information" is "user database 18."

**Means For Ranking The Likely Degree Of Interest For Each Of The Available Items Of Information In Accordance With A User Profile**

Claims 1 and 15 contain the term "means for ranking the likely degree of interest for each of the available items of information in accordance with a user profile." The parties agree that the term is a means-plus-function term governed by 35 U.S.C. § 112 ¶ 6 and that the claimed function is "ranking the likely degree of interest for each of the available items of information in accordance with a user profile." The parties, however, disagree regarding the structure corresponding to this function. Individual Networks contends the corresponding structure is "using a vector of weights, a feedback table and correlation matrix, regression analysis, principal component analysis, a combination of content-based and correlation-based prediction, genetic programming, genetic algorithms, or spreading activation to rank messages." Apple argues the corresponding structure is "a computer programmed with a ranking algorithm."

Since the ranking function is computer implemented, the patent must identify algorithms performed by a computer to accomplish the recited ranking function. *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). A computer programmed to execute one or more algorithms is properly understood as structural. *Computer Acceleration Corp. v. Microsoft Corp.*, 5l6 F. Supp. 2d 752 (E.D. Tex. 2007) (Clark, J.) (stating "the structure, in this case a computer which executes an algorithm, must be sufficiently disclosed"). In accordance with *WMS Gaming*, reference to the patent specification to identify specific algorithms the computer is programmed to perform may be done with explicit reference to text or figures in the specification, by reference to column and line numbers, or by identification of alternative algorithms disclosed in the specification. *Id.* (identifying the corresponding structure as three alternative algorithms disclosed in the specification); *McKesson Info. Solutions LLC v. The*

*Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 202 (D. Del. 2006) (stating that identification of structure includes identifying "the specific algorithm disclosed in the specification, or where it is disclosed (or otherwise inferred)"); *Digeo, Inc. v. Audible, Inc.*, 2006 U.S. Dist. LEXIS 22715, at *45 (W.D. Wash. Mar. 27, 2006) (identifying algorithm by citation to column and line references of approximately 77 lines of text).

The specification of the '567 Patent describes structure in the form of algorithms, programming, and analysis for performing the function of ranking the degree of interest in items of information consistent with a user profile. In particular, the specification describes the alternative algorithmic embodiments in detail:

> The ranking of messages in accordance with a user profile can be carried out with a number of different approaches. For example, the ranking can be based upon the content of the message, or upon indications provided by other users who have retrieved the message. . . . The weight value for each term is multiplied by the number of times that term occurs in the document. Referring to FIG. 5A, the results of this procedure is a *vector of weights*, which represents the content of the document.

'567 Patent, col. 6:4-17 (emphasis added).

> A second approach to the prediction of a user's interest in information can be based upon a correlation with the indications provided by other users. Referring to FIG. 6 . . . . [u]sing the information in this table, a *correlation matrix* R can be generated, whose entries indicate the degree of correlation between the various users' interests in commonly retrieved messages.

'567 Patent, col. 6:62-7:3 (emphasis added).

> Other techniques are also applicable. For example, *regression analysis* can be used to identify the similarity of responses between users, and the amount by which other users' responses should be weighted for a given user. Alternatively, *principal component analysis* can be used to identify underlying aspects of the data that predict a score.

'567 Patent, col. 7:43-49 (emphasis added).

> In a preferred implementation of the invention, a *combination of content-based and correlation-based prediction* is employed to rank the relevance of each item of information. . . . [I]n a content-only predictor, rankings of messages can be changed

when a user gives a thumbs-up or thumbs-down vote on a retrieved message.  In contrast, in a correlation-only predictor, rankings for a given user change when another user who has seen at least one item in common with the given user votes on a message.

'567 Patent, col. 7:50-52, 9:30-35 (emphasis added).

One type of evolutionary programming that is suitable in this regard is known as *genetic programming*.  In this type of programming, data pertaining to the attributes of messages and user correlation are provided as a set of primitives.

'567 Patent, col. 7:65- 8:2 (emphasis added).

In a more specific implementation of evolutionary programming, the analysis technique known as *genetic algorithms* can be employed.  This technique differs from genetic programming by virtue of the fact that pre-defined parameters pertaining to the items of information are employed, rather than more general programming statements.

'567 Patent, col. 8:12-16 (emphasis added).

Another form of predictor can be based upon *spreading activation*. . . .  In this approach, nodes in the network represent users, documents, and terms or concepts.

'567 Patent, col. 8:24-27 (emphasis added).

Apple's construction applying simply a "ranking algorithm" improperly broadens the claim by ignoring specific structural embodiments in the specification.  Because the '567 Patent both specifically claims the embodiments of the algorithms and dedicates a substantial portion of the specification to describe them, excluding such algorithms from the corresponding structure would be contrary to the purpose of means-plus-function construction.  *See Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) (rejecting a broad means-plus-function construction in favor of the specific algorithms disclosed in the specification); *see also ConnecTel, LLC v. Cisco Sys., Inc.*, 428 F. Supp. 2d 564, 576 (E.D. Tex 2006) (Davis, J.) (finding the corresponding structure to be algorithms utilizing parameters set forth in multiple tables in the specification).

Individual Network's definition is incorrect insofar as it does not tie the list of ranking algorithms to any physical structure such as a computer. *Chiuminatta Concrete Concepts*, 145 F.3d at 1308 (holding that the district court erroneously identified corresponding structure as functional language rather than physical structure). The proper structure is a *computer* programmed to execute the disclosed algorithms.

Accordingly, the Court determines that the corresponding structure to the "means for ranking the likely degree of interest for each of the available items of information in accordance with a user profile" is "a computer programmed to execute one or more of a vector of weights algorithm, a correlation matrix algorithm, regression analysis algorithm, principal component analysis algorithm, content-based prediction algorithms and correlation-based prediction algorithms, a combination of content-based and correlation-based prediction analysis ranking algorithm, a genetic programming ranking algorithm, a spreading activation analysis ranking algorithm."

**Means For Presenting The Items Of Information To An Access Device In Order Of Ranking And Enabling A User To Retrieve Each Item**

Claims 1 and 15 contain the term "means for presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item." The parties agree that the term is a means-plus-function term governed by 35 U.S.C. § 112 ¶ 6 and the claimed function is "presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item." The parties, however, disagree regarding the structure disclosed in the specification corresponding to the agreed function. Apple contends the corresponding structure is "a user interface display." Individual Networks argues the

corresponding structure is "a window 26 displayed on a client computer containing a number of columns of information."

Both parties mistakenly interpret the function as presenting items of information to a *user*. The recited function, however, clearly states that the information is presented to an *access device*. For this reason, both parties' proffered constructions are erroneous.

The specification identifies the access device as the client computer, stating that "[t]he client computers . . . having the ability to access the server computer 10." '567 Patent, col. 3:49-52. The message server 16 is described as carrying out communications with each of the clients. '567 Patent, col. 4:2-3. In particular, the message server provides the list of ranked messages to the client program, which displays them through a suitable interface. '567 Patent, col. 4:45-47. Therefore, the specification links the message server 16 to presenting the items of information to the access device in order of ranking.

The specification states that each client computer "is associated with one or more users" and "includes a suitable communication program that enables the user to access messages stored at the server machine." '567 Patent, col. 3:56-59, col. 5:10-17. The communication program is also described as a "client program." '567 Patent, col. 5:10-17, col. 4:26-28, col. 4:45-47. Therefore, the specification links the client communication program to enabling a user to retrieve each item.

The Court determines that the structure corresponding to "means for presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item" to be "message server 16 and a client communication program."

**Means For Enabling The User To Indicate That User's Interest In Each Retrieved Item Of Information**

Claims 1 and 15 contain the term "means for enabling the user to indicate that user's interest in each retrieved item of information." The parties agree that the term is a means-plus-function term governed by 35 U.S.C. § 112 ¶ 6. The parties, however, disagree regarding the structure disclosed in the specification corresponding to the agreed function of "enabling the user to indicate that user's interest in each retrieved item of information." Apple contends the corresponding structure is "user interface buttons (or icons)." Individual Networks argues the corresponding structure is "two or three icons which permit the user to indicate his or her interest in that particular message."

The specification describes the process whereby the user indicates interest in items of information by referencing FIG. 4. The message is displayed before the user in an appropriate window 34. Two icons permit the user to indicate interest in a particular message. If the user finds the message to be of interest, a "thumbs-up" icon 38 can be selected. Alternatively, if the message is of little to no interest to the user, a "thumbs-down" icon 40 can be selected. When a user selects an icon, the indication is forwarded to the server 10 to update the user profile. '567 Patent, col. 5:18-35. The descriptive structure that enables the user to indicate interest in each retrieved item of information is the display window 34 shown in FIG. 4 having a thumbs-up icon 38 and a thumbs-down icon 40.

The specification also discusses the possibility of "three options" to enable the user to indicate high interest, mediocre interest, or minimal interest, but does not link these options to any actual corresponding structure in the specification or drawings. '567 Patent, col. 5:35-42. Therefore, while the "three options" embodiment may ultimately be understood by a jury to be

within the scope of the corresponding structure's "equivalents," the specification's definition itself is insufficiently structural to be identified as corresponding structure.

The Court determines that the corresponding structure to "means for enabling the user to indicate that user's interest in each retrieved item of information" is "display window 34 shown in FIG. 4 having a thumbs-up icon 38 and a thumbs-down icon 40."

**Means For Updating The User's Profile In Response To Indications Of Interest Provided By The User**

Claims 1 and 15 contain the term "means for updating the user's profile in response to indications of interest provided by the user." The parties agree that the term is a means-plus-function term governed by 35 U.S.C. § 112 ¶ 6. The parties, however, disagree regarding the structure disclosed in the specification corresponding to the agreed function of "updating the user's profile in response to indications of interest provided by the user." Apple contends the corresponding structure is "server 10 that updates the user profile in the user database 18." Individual Networks argues the corresponding structure is "client computer forwarding an indication to a server where it is used to update the user profile."

Individual Networks improperly includes the language "in response to indications of interest provided by a user" as being part of the function. However, the additional language only indicates when the updating is to be made.

The specification describes that the indication of interest by the user "is forwarded to the server 10, where it is used to update the user profile." '567 Patent, col. 5:33-35. Therefore, the specification identifies the server 10 as the corresponding structure that performs the recited function of updating the user's profile.

The Court determines that the structure corresponding to "means for updating the user's profile in response to indications of interest provided by the user" is "the server 10 that updates the user profile in the user database 18."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in Appendix B. The claims with the disputed terms in bold are set forth in Appendix A.

**So ORDERED and SIGNED this 12th day of January, 2009.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# APPENDIX A

## U.S. PATENT NO. 7,117,516

1. A method for providing customized digital media from a **computer system** to a user over an electronic network comprising: receiving data from a user, directly or through an intermediary, which data identifies the user; generating a customized media list at the **computer system**, based on personalized data of the user, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast schedule, the media options being **stored** at the **computer system**; **storing** the customized media list at the **computer system**, wherein **the customized media list is not stored at the user**; **storing customized media corresponding to the customized media list** at the **computer system**; and delivering directly to the user from the **computer system** over the network the customized media, **without storing the customized media local to the user**, independent of a broadcast schedule. 13. A method for providing customized digital media from a **computer system** to a user over an electronic network comprising: receiving data from a user, directly or through an intermediary, which data identifies the user; generating a customized media list, based on personalized data of the user, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast schedule; **storing** the customized media list at the **computer system**, wherein **the customized media list is not stored at the user**; and **delivering customized media corresponding to the customized media list** from the **computer system**. 14. A method for providing customized digital media to a user over an electronic network comprising: receiving data from a user, directly or through an intermediary, which data identifies the user; generating a customized media list, based on personalized data of the user, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast schedule, the media options **stored** at a **computer system**; **storing customized media corresponding to the customized media list**; and delivering customized media from the **computer system** to the user over the network independent of a broadcast schedule, wherein the user receives the customized media **without storing the customized media local to the user**. 15. A method for providing customized digital media from a **computer system** to a user over an electronic network comprising: receiving updated personal profile information after account initialization at the **computer system** over the electronic network, the updated personal profile information identifying characteristics of the user, wherein the personal profile information is not **stored** local to the user; generating a customized media list, based on the personal profile information, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast schedule; and **delivering customized media corresponding to the customized media list**. 16. A method for providing customized digital media from a **computer system** to a user over an electronic network comprising: receiving updated media preference information after account initialization at the **computer system** over the electronic network, the updated media preference information identifying media preferences of the user, wherein the media preference information is not **stored** local to the user; generating a customized media list, based on the media preferences, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast; and delivering customized media corresponding to the customized digital media list.

18. A method for providing customized digital media from a **computer system** to a user over an electronic network comprising: receiving updated personal profile information after account initialization at the **computer system** over the electronic network, the updated personal profile identifying characteristics of the user, wherein the personal profile information is not processed local to the user; generating a customized media list, based on the personal profile information, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast schedule; and **delivering**

**customized media corresponding to the customized media list**. 19. A method for providing customized digital media from a **computer system** to a user over an electronic network comprising: receiving updated media preference information after account initialization at the **computer system** over the electronic network, the updated media preference information identifying media preferences of the user, wherein the media preference information is not processed local to the user; generating a customized media list, based on the media preferences, wherein the list comprises a program or advertisement including at least one entertainment or information program or advertisement, or any combination of such programs or advertisements, which program or advertisement is selected from media options available independent of a broadcast schedule; and delivering customized media corresponding to the customized digital media list.

## U.S. PATENT NO. 7,117,516

1. An information access system for automatically presenting users with information items of interest, comprising: a computer system containing a database of information items available to be presented to users of the system; at least one access device for enabling users to communicate with the computer system and access any of the items of available information; **means for storing a user profile for each user having access to the available items of information; means for raking the likely degree of interest for each of the available items of information in accordance with a user profile; means for presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item; means for enabling the user to indicate that user's interest in each retrieved item of information; and means for updating the user's profile in response to indications of interest provided by the user.**

15. An information access system for automatically presenting users with information items of interest, comprising: a computer system containing a database of information items available to be presented to users of the system; at least one access device for enabling users to communicate with the computer system and access any of the items of available information; **means for storing a user profile for each user having access to the available items of information; means for ranking the likely degree of interest for each of the available items of information in accordance with a user profile, on the basis of correlation with indications of interest provided by other users; means for presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item; means for enabling the user to indicate that user's interest in each retrieved item of information; and means for updating the user's profile in response to indications of interest provided by the user.**

**U.S. PATENT NO. 7,117,516**

| Term | Court's Construction |
|------|---------------------|
| Computer system | one or more general purpose computing devices performing server and/or client functions, including a storage medium |
| stored/storing | retained/retaining, other than temporarily for display purposes |
| the customized media list is not stored at the user | the customized media list is not retained, other than temporarily for display purposes, on the user's computer or other display device |
| without storing the customized media local to the user | the customized media is not retained, other than temporarily for display purposes on the user's computer or other display device |
| storing customized media corresponding to the customized media list | storing (as previously construed) one or more of the media represented on the customized media list |
| delivering customized media corresponding to the customized media list | sending to the user one or more of the media represented on the customized media list |

**U.S. PATENT NO. 5,724,567**

| Term | Court's Construction |
|------|---------------------|
| means for storing a user profile for each user having access to the available items of information | function- storing a user profile for each user having access to the available items of information<br><br>structure- user database 18 |
| means for ranking the likely degree of interest for each of the available items of information in accordance with a user profile | function- ranking the likely degree of interest for each of the available items of information in accordance with a user profile<br><br>structure- a computer programmed to execute one or more of a vector of weights algorithm, a correlation matrix algorithm, regression analysis algorithm, principal component analysis algorithm, content-based prediction algorithms and correlation-based prediction algorithms, a combination of content-based and correlation-based prediction analysis ranking algorithm, a genetic programming ranking algorithm, a spreading activation analysis ranking algorithm |

| | |
|---|---|
| means for presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item | function- presenting the items of information to an access device in order of ranking and enabling a user to retrieve each item<br><br>structure- message server 16 and a client communication program |
| means for enabling the user to indicate that user's interest in each retrieved item of information | function- "enabling the user to indicate that user's interest in each retrieved item of information<br><br>structure- display window 34 shown in FIG. 4 having a thumbs-up icon 38 and a thumbs-down icon 40 |
| means for updating the user's profile in response to indications of interest provided by the user | function- updating the user's profile in response to indications of interest provided by the user<br><br>structure- the server 10 that updates the user profile in the user database 18 |